317-0163, the people of the state of Illinois, added by Stephanie Raymond v. Brian James D. Rowell, paneled by Terry Swann. Mr. Swann. Good afternoon. May I approach? You may. Fire when ready. Thank you, your honors. May it please the court and counsel. I'm here today from the State Appellate Defender's Office, and I represent the interests of the defendant, Mr. Deroo. His case was out of Rock Island County. My client was convicted by a jury of aggravated driving under the influence, both the per se charge and the actual A1 and A2. Additionally, he was also convicted for the offense of aggravated driving license revoked. Three parts to this appeal. The first part is that the trial court erred in denying the defendant appellant's motion to suppress the evidence and failing to quash the arrest. This is a constitutional issue of a warrantless blood draw. Who drew the blood? It was drawn at the hospital. On whose order? The record is clear that there was the deputy, Woodthorpe, made a request for a warrant. Was that before or after the blood was already drawn? That was before. And the issue here now is that it's our position, for my client on appeal, that under the Supreme Court cases of McNeely and Birchfield, there's a privacy interest for a Fourth Amendment right to a blood draw for a warrantless search. The exception is exigency. The deputy requested... Aren't you referring to case law dealing when you've got the police activity doing it or there are agents of the police? When here you have a defendant's blood was drawn by the hospital for the purposes of medical treatment. Isn't that right? That was the position at the trial. But here's where it's different, in my opinion. I'm asking for the justices to consider this. The theory here for the appellant defendant, the legal theory is, is that the deputy, Woodthorpe, while at Trinity Hospital, was in essence an agent for the hospital. Otherwise it would be a... certainly, you know, not certainly. It's arguable, and that's what the trial far ruled, that it was a private draw. But here's why I believe that under this agency theory... Wait, wait, wait. Deputy is an agent of the hospital? Or would it be... Under the law... Excuse me. I'm sorry. Under the law, would it have to be the reverse, that the hospital would be the agency of the state? Right. That's right. I misspoke. Oh, okay. I'm sorry. I apologize to the justices. Okay, so you're going to say, constructively, they are the agent of the state, and the state action was being taken by the agent of the hospital. Yes, and here's the theory. That's a good theory. What's the evidence show? The evidence shows as follows, and it's in the record. Very brief, but it's there. Number one, Woodthorpe, Deputy Woodthorpe, was at the hospital for two hours. That, while at the hospital, she really only conversed with the defendant for about 15, 20 minutes. For a lack of a better adjective, I don't mean to be rude, she kind of hung around the hospital waiting for the blood draw results. And the record states that one of the employees of the hospital goes, here's the blood draw results, Deputy. Take a look. Okay, but the ER doc said he was the one that ordered the test for medical treatment. You know, in the real world, correct me if I'm wrong, you get trauma victims going into the hospital after car crashes and stuff. So, sometimes they're acting about ten nights dingy. So, the doctors want to know, is this because of a head injury or because of alcohol or drugs on board? And so, in these trauma cases, they virtually always draw blood. The ER doc said he ordered the blood. The fact that somebody showed the copper the blood draw test, so what? Because they ultimately brought the blood tests into hospital records, right? It's a little bit more than a so what, in my opinion, and here's why. In that the deputy, experienced, gets on the phone, calls the judge on call, I want a warrant. No, I'd rather get, we subpoena these records. So, it's the exigent circumstance exception. There's nothing exigent going on here. So, to do the warrantless blood draw, they needed to get the warrant. They needed the subpoena. The deputy asked. But the police didn't draw the blood. No. The testimony at trial, if I'm not, correct me again if I'm wrong, was that the ER doc said he ordered the blood test. Yes, that's correct. And the record is clear that Jennifer Wilkinson drew the blood but sent it to the lab. And so, then we'll talk about the foundational arguments. But clearly, no, I can't sit here and I'm not going to sit here and tell the justices that Deputy Woodward ordered this. No. But it wasn't exigent. Therefore, the warrantless draw is a Fourth Amendment violation. But it's only a Fourth Amendment violation if the police drew it. The ER doc said he or she drew it, ordered it drawn, for purposes of medical treatment, just like they do in virtually every trauma case so that they can evaluate, is this person dinging because they're drunk or because they've got a closed head injury? I understand. But here is where the hospital was basically just an agent for the state. That's the theory. Okay. What about your argument on the admissibility of these results? Let's assume that they're done and you lose on the Fourth Amendment. Okay. What about that third argument? It still has to be a foundational requirement if it's a business record. Here it went through multiple stages. You have this Jennifer Wilkinson drew the blood, but she sent it to a lab. Then Dr. Baker looks at this document. He identifies, well, it's Mr. DeRue's. It's my client's blood because it says so on the paper. But everything else is full of redactions, and I don't believe that it's a qualified record to establish all the elements necessary to get it in as a business record. Assume that it is. I assume that it is. Okay. Do you still have an argument on admissibility? I believe so. And what would that be? The argument is that it's not the proper chain. It's a piece of paper testified over to by Dr. Gaither. The state, they have the burden to prove all the elements of the crime, of the offense, and the state was within their power. They could have called Wilkinson. Then they could have called the lab. Then they could have called Gaither. Then they could have called Winston, Weinstein, but they didn't. And so to try to get the, because Dr. Gaither testified over the record, and I understand Wilson v. Clark, but I just believe it's a hearsay document, and it's not the proper chain of evidence. Well, I said assume that it was. What about 803.6 in the rule versus the code provision of 11-501.4? Well, that's where the, and I argued with the, it was discussed in the first district case of Hutchinson where then the appellant's counsel brought up Peterson, and I'm arguing that basically the Peterson hearsay rule should take precedence even though, and I argued it in the last section of my brief to point it to the justices. As I said. If Hutchinson's correct, this is okay, isn't it? Well, I'm not, but why should this district automatically say that Hutchinson's correct? I think that Peterson seems to say that, you know. Well, let me ask you this. Aren't virtually all business, I'm sorry. Yeah, you are. Aren't virtually all business records hearsay almost by definition? Well, under 237, 236, I'm sorry. And the rules of evidence. Yes, but there's still a certain foundational requirement. What is the foundation? The foundation is that they were drawn in the ordinary course of business. And that the standards fit in the ordinary course of business. Right, and that the proper standards. So here you have, it's a piece of paper. Dr. Gaither testifies off this piece of paper, but there's nothing to show that it was done within proper standards and it kept an ordinary course of business. It's a piece of paper. And therefore, yes, it's hearsay. Yes, I understand the rule of hearsay exception, but I don't think that just because it's a piece of paper that's hearsay means it's automatically admissible without proper foundation. Well, we just got done saying they laid the proper foundation. This was done in the ordinary course of business. This record was kept in the ordinary course of business. And here's what it says. Now, you can attack it, but it's just like when at a trial, when a physician comes in and testifies somebody's condition based on an x-ray. He didn't take the x-ray, but he looks at an x-ray report, and it says the x-ray report says this. It's hearsay, but it's a business record. Now, the other side can come in and attack it, or they will try to, but you don't have to call the x-ray technician or even necessarily the radiologist if the orthopedic surgeon says, I relied on that x-ray to treat this patient. That x-ray report, excuse me. Yeah. Well, normally business records aren't accepted in a lot of criminal cases, but there is an exception, as Hutchison's case recognizes, for the statute that Justice Holdrege referred to, 501.4. Isn't that right? Yes. And they laid the foundation, what Justice Holdrege talked about, in 501.4. But how does that work? Doesn't that conflict with the recent compilation of the evidence code? It's not contrary to it. There are an exception for statutory provisions that allow it. You're talking about 503.6. Are you going to have to rely on the commentary? No, it's in the rule, in 101. When my colleagues get done, they'll let you know. Good. So noted, Your Honor. We're done for the moment. Counsel has two minutes. Okay. The Peterson case out of Will County, then I'm asking on behalf of my client that this appellate court follow what analysis in Peterson is that if a statute conflicts with a Supreme Court rule, the Supreme Court rule would prevail. I believe that's in part one of the things that Peterson stood for. Therefore, even though under the 803.6 provision of the Illinois Rules of Evidence, allowing in a hearsay, there still has to be some foundation. I don't believe that. Was there a conflict between the rule and the code provision? There can be, yes. Is there? I believe yes. I mean, clearly 803 makes an exception for this type of situation, correct? Yes. Okay. What does the rule say? Well, the rule here, but it, well, maybe I need to back that up a little bit. You still need to lay the foundation. Even though it's a business record, I don't believe that the state met its burden here. I just, I don't. And therefore, even though it is what appears to be offered as a business record, it should not have been admitted by the trial court because there was missing parts of the foundational requirement. Okay. I think a long while ago I said assume that it is, assume that it met that. I'm asking, is there a conflict between the rule and the statute? Between the rule of evidence and 11501.4? I believe the answer is yes, because I believe that the rule says you need foundation even though it's a business record. And if the statute does not, I don't even believe it implies foundation by implication. So therefore, I believe the rule conflicts with the statute and that the evidence should not have been admitted because there wasn't proper foundation even for a business record. Counsel, the time is up. All right. You have some room. Thank you, Your Honor. Ms. Raymond. May it please the Court, Your Honors, Counsel, I apologize for my voice, I've been a little uncomfortable. So I believe that we've already covered that in this situation, the blood was requested to be drawn at the behest of the doctor, not the police. So it's the people's position that there was no forthcoming violation in this case. Regarding the admissibility of the blood draw results, the statute specifically allows for that. As long as they were done in the regular course of emergency treatment, not at the behest of the police, and that they were analyzed in a lab routinely used by the hospital. What do we do with that language in the Rule 803-6, not including in criminal cases medical records? The 803-6 says that it specifically doesn't apply to criminal situations. And the statute allows for this type of information to be disclosed to the police and used in criminal cases. Well, that's the statute. But what about our rule, Supreme Court rule? Well, in the Hutchinson case, they did discuss this specifically, of course. And in that case, they pointed to the committee comments, which discussed the fact that the rules of evidence are not meant to supersede any statutory rules of evidence already outlined. And it's the people's position that that's correct. It was just in there by the Rules Committee, probably. But they didn't know the statute. Well, I don't know if it was there. You don't think the Rules Committee on Evidence made mistakes, do you? Never. I mean, of course conflicts exist within the law at all points. But in this case, a defendant's argument was that 803-6 superseded the statute, and it's the people's position that it does not. And in this case, the blood draw results were they were taken properly, not in violation of Fourth Amendment. They were admitted properly, and that there's no violation here. Regarding her presence at the hospital, which the defendant points to, the defendant's blood was drawn within the first 30 minutes of him being there. And she only spent 15 to 20 minutes in his room, correct? But she testified that her investigation was finished at that point. She went down the hall into another room where she got paperwork. Her presence at the hospital does not mean that she in any way ordered the blood test, or that she would, you know. Either way, they were properly disclosed. So if there are no other questions, if the people would just ask that you affirm. All right. Thank you. Mr. Schwartz, some rebuttal. I'm going to use the last few minutes to say that the whole, the evidence and the testimony regarding the accommodation of a business record goes to trustworthiness. This is a criminal proceeding. The state has a heavy burden to meet to convict. You have a person who drew the blood, who was sent to the lab, and then a doctor. It's still, it's the position of this appellant that the evidence regarding the foundation lacks what I believe is trustworthiness. If the record is established lacks trustworthiness, then the business record being offered in the position of myself for my client is that it may not be admitted as an exception to the hearsay rule. I opine to this Court that the evidence and testimony in the record indicates a lack of trustworthiness that the blood results is tendered. Based on this lack of trustworthiness for this piece of paper that Dr. Gaither testified over, I'm asking for this appellate court to state that the trial court erred when admitting these results into evidence as an exception to the hearsay rule. Dr. Gaither, the record will reflect that Dr. Gaither testified as the blood results, but not a chain of custody. The trial court, my interpretation of the trial court's order not to allow Gaither to testify as the chain of custody, establishes a lack of trustworthiness of this record. If the trial judge says, doctor, testify as to chain, doctor does so, it makes the hearsay record trustworthy. That wasn't done. Therefore, I believe that the record, although hearsay, lacks the proper trustworthiness and therefore should not have been admitted under 8036. Do you have anything else? Well, and I think the rest of it follows through with Jen Wilkerson. Again, she drew the blood, but she didn't take it to the lab. She doesn't know what happened. Again, Gaither testified over a piece of paper that said DeRue's name. This doesn't establish trustworthiness. Therefore, it should not be admitted as an exception to the hearsay rule under Illinois Rule of Evidence 8036. I mean, Gaither testified the record is clear from a printed and redacted copy of a lab result. I don't know how that could be trustworthy. That Dr. Gaither was able to conclude that the results came from the defendant appellant because his name and date of birth was on the paper. But there's nothing else to establish or verify that that was correct. Trustworthiness. I'm asking the court if the court is going to discuss this issue of this business record that the business record is not trustworthy as presented by the state and therefore I'm asking that the decision be reversed because the document which was admitted was in error by the trial court. Thank you. Thank you, counsel. Thank you, Mr. Sloan. Ms. Raymond, thank you also. This matter will be taken under advisement. This position will be pursued.